UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUZANNE ERICSSON,

        Plaintiff,

   v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

        Defendant.

Civil Action No. 24-0749 (JEB)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT THEREOF**

# TABLE OF CONTENTS

Table of Contents ............................................................................................................ i

Table of Authorities ....................................................................................................... iii

Background ...................................................................................................................... 1

    I.    Factual Background ........................................................................................ 1

    II.    Procedural Background .................................................................................. 2

ARGUMENT .................................................................................................................... 2

    I.    The Withholding of Records Related to the Adjudication of Plaintiff's Visa Pursuant to FOIA Exemptions 3, 5, 6, 7(C), and 7(E) Was Proper. ....................... 4

        A.    The Agency Properly Withheld Information Under Exemption 3 Because INA Section 222(f) Categorically Prohibits Its Disclosure. ....................... 5

        B.    The Agency Properly Withheld the Requested Information Pursuant to Exemption 5 Because it is Protected by the Deliberative-Process Privilege. ................................................................................................... 9

        C.    The Agency Properly Withheld Information Pursuant to Exemptions 6 and 7(C) for Privacy Concerns. ................................................................... 11

        D.    The Agency Properly Withheld Information Under Exemption 7(E) to Avoid Risks of Circumvention of the Law. ............................................... 14

    II.    The Department Properly Determined that the Responsive Records Contained No Reasonably Segregable Portions. ......................................................................... 19

Conclusion ..................................................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adionser v. Dep't of Just.*,
   811 F. Supp. 2d 284 (D.D.C. 2011) ........................................................................ 10
*Advancement Proj. v. Dep't of Homeland Sec.*,
   549 F. Supp. 3d 128 (D.D.C. 2021) ................................................................ 15, 17
*Advancement Proj. v. Dep't of Homeland Sec.*, Civ. A.,
   No. 19-0052 (RC), 2022 WL 4094061, at (D.D.C. Sept. 7, 2022) .................. 16, 18
*Airaj v. U.S. Dep't of State*,
   No. 16-5193, 2017 WL 2347794 (D.C. Cir. Mar. 30, 2017) ................................... 5
*Airaj v. United States*,
   Civ. A. No. 15-983, 2016 WL 1698260 (D.D.C. Apr. 27, 2016) ..................... 5, 6, 8
*Allard K. Lowenstein Int'l Hum. Rts. Project v. Dep't of Homeland Sec.*,
   626 F.3d 678 (2d Cir. 2010) .................................................................................. 17
*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................ 3
*Armstrong v. Exec. Off. of the President*,
   97 F.3d 575 (D.C. Cir. 1996) ................................................................................ 19
*Ball v. U.S. Marshals Serv.*, Civ. A.,
   No. 19-1230, 2021 WL 4860590 (D.D.C. Oct. 19, 2021) ..................................... 14
*Bartko v. Dep't of Just.*,
   898 F.3d 51 (D.C. Cir. 2018) ................................................................................ 13
*Beck v. Dep't of Just.*,
   997 F.2d 1489 (D.C. Cir. 1993) ............................................................................ 11
*Beltranena v. Dep't of State*,
   821 F. Supp. 2d 167 (D.D.C. 2011) ............................................................. 7, 8, 19
*Blackwell v. FBI*,
   646 F.3d 37 (D.C. Cir. 2011) .................................................................... 14, 17, 18
*Boyd v. Dep't of Just.*,
   475 F.3d 381 (D.C. Cir. 2007) .............................................................................. 13
*Brayton v. Off. of the U.S. Trade,*
   *Rep.*, 641 F.3d 521 (D.C. Cir. 2011) ...................................................................... 3
*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ........................................................................... 9, 10
*Corley v. Dep't of Just.*,
   998 F.3d 981 (D.C. Cir. 2021) ................................................................................ 5
*Ctr. for Nat'l Pol'y Rev. on Race & Urb. Issues v. Weinberger*,
   502 F.2d 370 (D.C. Cir. 1974) .............................................................................. 16
*Davis v. Dep't of Just.*,
   968 F.2d 1276 (D.C. Cir. 1992) ............................................................................ 11
*Dep't of Air Force v. Rose*,
   425 U.S. 352 (1976) ................................................................................................ 3

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) ............................................................................................... 9
*Dep't of Just.*,
  746 F.3d 1082 (D.C. Cir. 2014) ................................................................... 4, 12
*Dep't of State v. Wash. Post Co.*,
  456 U.S. 595 (1982) ................................................................... 11, 12, 13
*FBI v. Abramson*,
  456 U.S. 615 (1982) ............................................................................................... 3
*Food Mktg. Inst. v. Argus Leader Media*,
  588 U.S. 427 (2019) .................................................................................... 3, 4
*Gosen v. USCIS*,
  75 F. Supp. 3d 279 (D.D.C. 2014) ................................................................. 12, 16
*Groenendal v. Exec. Off. For U.S. Att'ys*, Civ. A.,
  No. 20-1030, 2024 WL 1299333 (D.D.C. Mar. 27, 2024) ...................................... 14
*Jefferson v. Dep't of Just.*,
  284 F.3d 172 (D.C. Cir. 2002) ........................................................................ 12, 15
*Johnson v. Exec. Off. for U.S. Att'ys*,
  310 F.3d 771 (D.C. Cir. 2002) ............................................................................. 19
*Jud. Watch, Inc. v. Dep't of Com.*,
  337 F. Supp. 2d 146 ......................................................................................... 14
*Jud. Watch, Inc. v. Dep't of Com.*,
  375 F. Supp. 3d 93 (D.D.C. 2019) ........................................................................ 4
*Jud. Watch, Inc. v. Dep't of State*,
  650 F. Supp. 2d 28 (D.D.C. 2009) ........................................................................ 7
*Keys v. Dep't of Just.*,
  830 F.2d 337 (D.C. Cir. 1987) ............................................................................. 15
*Larson v. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) ......................................................................... 4, 5
*Lesar v. Dep't of Just.*,
  636 F.2d 472 (D.C. Cir. 1980) ............................................................................. 13
*Lindsey v. FBI*,
  490 F. Supp. 3d 1 (D.D.C. 2020) ......................................................................... 12
*Loving v. Dep't of Def.*,
  550 F.3d 32 ((D.C. Cir. 2008) .............................................................................. 9
*Mapother v. Dep't of Just.*,
  3 F.3d 1533 (D.C. Cir. 1993) ............................................................................... 9
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .............................................................................................. 3
*Mayer Brown LLP v. IRS*,
  562 F.3d 1190 (D.C. Cir. 2009) .................................................................... 14, 18
*Mead Data Cent., Inc. v. Dep't of Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) ......................................................................... 4, 19
*Media Rsch. Ctr. v. Dep't of Just.*,
  818 F. Supp. 2d 131 (D.D.C. 2011) ........................................................................ 4
*Medina-Hincapie Dep't of State*,
  700 F.2d 73 (D.C. Cir. 1983) .................................................................... 5, 6, 7, 9

*Nat'l Archives & Recs. Admin. v. Favish*,
   541 U.S. 157 (2004).................................................................................................... 13
*Nat'l Lab. Rels. Bd. v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975)...................................................................................................... 9
*Nat'l Treasury Emps. Union v. U.S. Customs Serv.*,
   802 F.2d 525 (D.C. Cir. 1986)................................................................................... 4, 5
*Nikaj v. Dep't of State*, Civ. A.,
   No. 18-0496, 2019 WL 2602520 (W.D. Wash. Jun. 25, 2019) ................................. 16
*Nova Oculus Partners, LLC v. SEC*,
   486 F. Supp. 3d 280 (D.D.C. 2020)........................................................................... 12
*Perry-Torres v. Dep't of State*,
   404 F. Supp. 2d 140 (D.D.C. 2005)............................................................................. 9
*Pratt v. Webster*,
   673 F.2d 408 (D.C. Cir 1982)..................................................................................... 15
*Project for Priv. & Surveillance Accountability, Inc. v. Dep't of Just.*,
   Civ. A. No. 21-2362 (RC), 2024 WL 2864191 (D.D.C. June 6, 2024).................... 18
*Skinner v. Dep't of Just.*,
   806 F. Supp. 2d 105 (D.D.C. 2011)............................................................................ 16
*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007).................................................................................. 19
*Tax Analysts v. IRS*,
   294 F.3d 71 (D.C. Cir. 2002)...................................................................................... 15
*Toensing v. Dep't of Just.*,
   890 F. Supp. 2d 121 (D.D.C. 2012)............................................................................. 4
*U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*,
   740 F.3d 195 (D.C. Cir. 2014)............................................................................... 15, 17
*Vaughn v. Rosen*,
   484 F.2d 820 (D.C. Cir. 1973)..................................................................................... 4
*Vizcarra Calderon v. Dep't of Homeland Sec.*,
   Civ. A. No. 18-0764 (CRC), 2020 WL 805212 n.4 (D.D.C. Feb. 18, 2020)......................... 6, 7
*Willis v. FBI*,
   Civ. A. No. 17-1959 (KBJ), 2019 WL 2138036 (D.D.C. May 16, 2019) ............................. 11

Statutes

5 U.S.C. § 552(a)(3) ....................................................................................................... 3
5 U.S.C. § 552(b) ...................................................................................................... 3, 18
5 U.S.C. § 552(b)(3) ....................................................................................................... 5
5 U.S.C. § 552(b)(3)(7)(E)..................................................................................... 14, 17
5 U.S.C. § 552(b)(5) ....................................................................................................... 9
5 U.S.C. § 552(b)(6) ................................................................................................ 11, 12
5 U.S.C. § 552(b)(7)(C) ................................................................................................ 11
8 U.S.C. § 1202(f)................................................................................................... 2, 5, 7

Rules

Fed. R. Civ. P. 56(a) ....................................................................................................... 2

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, Defendant U.S. Citizenship and Immigration Services ("USCIS" or the "Agency"), a component of the Department of Homeland Security, respectfully moves for summary judgment in this Freedom of Information Act ("FOIA") case. Plaintiff, Suzanne Ericsson, requested documents from the Agency related to her application for a non-immigrant visa. *See* Compl. (ECF No. 1) ¶ 6. The Agency properly withheld records based on FOIA Exemptions 3, 5, 6, 7(C), and 7(E) and is entitled to judgment as a matter of law. Indeed, in response to Plaintiff's FOIA request, the Agency produced all reasonably segregable non-exempt responsive records and properly withheld information pursuant to the statutory exemptions. For these reasons, the Agency respectfully requests that the Court grant this motion and enter summary judgment for the Agency.

## BACKGROUND

### I.    Factual Background

As relevant here, Ericsson applied for an L-1 nonimmigrant visa at the U.S. Embassy in Bermuda and attended a visa interview in Bermuda on August 31, 2023. Ex. C, Plaintiff Appeal Letter, at 1. After the interview, the reviewing officer notified Ericsson that the Embassy had placed her application in administrative processing and referred her underlying L-1A petition to the Agency for potential revocation. *Id.* On September 27, 2023, through counsel, Ericsson submitted a FOIA request to the Agency seeking "[a]ll communications from the Department of State in connection with its return to USCIS of L-1 petition # SRC2325250371." Ex. A, Plaintiff FOIA Request, at 3. The Agency assigned reference number "NRC-2023-309361" to the request. Compl. ¶ 8.

In response to Ericsson's request, Agency personnel determined that any responsive records would be located at the Agency's Southern Regional Center-Texas Service Center. Baxley Decl. ¶ 11. Agency staff ran a search for responsive records in STACKS, an automated Agency

file system that provides access to immigration records from several systems and scanned all responsive records into the Agency's FOIA system. *Id.* ¶¶ 12-13. There are no other locations or databases reasonably likely to contain responsive records. *Id.* ¶ 11.

The Agency's search returned sixteen pages of responsive records. *Id.* ¶ 14. On November 2, 2023, the Agency transmitted all responsive, non-exempt records, including thirteen pages in full, to Ericsson. *Id.* The Agency withheld three pages in full under FOIA Exemption 3 pursuant to Section 222(f) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1202(f). *Id.*

On December 14, 2023, Ericsson filed an administrative appeal challenging the Agency's use of Exemption 3 to withhold the three pages. *See* Ex. C, Plaintiff Appeal Letter, at 2. On January 12, 2024, the Agency's FOIA appeals office sent Ericsson a letter concurring with the Agency's determination and advising that the withheld records were protected from disclosure. Baxley Decl. ¶ 16.

## II.    <u>Procedural Background</u>

On March 24, 2024, Ericsson filed her Complaint in this Court. *See* Compl. (ECF No. 1). She alleges that the Agency improperly withheld three pages of records. Compl. ¶¶ 27-30. Ericsson asks this Court to order the Agency to produce all records to which she is entitled under FOIA; to declare she is entitled to disclosure of the requested records; and to award reasonable attorney's fees and costs. *Id.* at 6, Prayer for Relief.

## ARGUMENT

Summary judgment is appropriate if the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While the party seeking summary judgment must demonstrate the absence of a genuine issue of material fact, "the adverse party must set forth specific facts showing that

there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (cleaned up). A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Id.* at 248. In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny[.]" *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). The statute generally requires the government to "make the records promptly available to any person" who makes "any request for records[.]" 5 U.S.C. § 552(a)(3). While "the basic policy [is] disclosure, not secrecy[,]" Congress has recognized that "legitimate governmental and private interests could be harmed by release of certain types of information[.]" *FBI v. Abramson*, 456 U.S. 615, 621 (1982). Thus, Congress vested the government with authority to withhold information falling within one of nine enumerated exemptions. 5 U.S.C. § 552(b). Courts "'have no license to give [statutory] exemption[s] anything but a fair reading.'" *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 439 (2019) (citation omitted; alterations in original). Accordingly, courts may neither "*expand* [a FOIA exemption] beyond what its terms permit," nor may they "arbitrarily *constrict* it either by adding limitations found nowhere in its terms." *Id.* (emphases in original). The Supreme Court therefore explicitly rejected the argument that "FOIA exemptions should be narrowly construed," reasoning that "FOIA expressly recognizes that 'important interests [are] served by

[its] exemptions,' and '[t]hose exemptions are as much a part of [FOIA's] purpose[s and policies] as the [statute's disclosure] requirement.'" *Id.* (citations omitted; alterations in original).

When a plaintiff challenges an agency's withholdings in response to a FOIA request, the agency must show that "each document that falls within the class requested either has been produced or is wholly exempt from the Act's inspection requirements." *Toensing v. Dep't of Just.*, 890 F. Supp. 2d 121, 131 (D.D.C. 2012) (cleaned up).  An agency must show that "(I) the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption; or (II) disclosure is prohibited by law[.]" *Jud. Watch, Inc. v. Dep't of Com.*, 375 F. Supp. 3d 93, 97-98 (D.D.C. 2019) (quoting 5 U.S.C. § 552(a)(8)(A)).

**I.    The Withholding of Records Related to the Adjudication of Plaintiff's Visa Pursuant to FOIA Exemptions 3, 5, 6, 7(C), and 7(E) Was Proper.**

"The agency bears the burden of establishing that a claimed exemption applies." *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014).  "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 137 (D.D.C. 2011) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).  A court "may rely on non-conclusory agency affidavits demonstrating the basis for withholding if they are not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *Reps. Comm.*, 3 F.4th at 361.  An agency may also meet its burden to establish the applicability of an exemption by providing a *Vaughn* index to "permit adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treasury Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977); *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973)).  The index must contain "an adequate

description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *Nat'l Treasury*, 802 F.2d at 527 n. 9.

Here, Ericsson challenges the Agency's withholding of records related to her visa adjudication. *See generally* Compl. The Agency properly withheld this information pursuant to Exemptions 3, 5, 6, 7(C) and 7(E).

### A. The Agency Properly Withheld Information Under Exemption 3 Because INA Section 222(f) Categorically Prohibits Its Disclosure.

FOIA Exemption 3 permits an agency to withhold information that is protected from disclosure by another statute, subject to certain conditions. 5 U.S.C. § 552(b)(3). "To withhold records under Exemption 3, an agency must make two showings: 'that the statute [] is one of exemption as contemplated by Exemption 3,' and 'that the withheld material falls within the statute.'" *Corley v. Dep't of Just.*, 998 F.3d 981, 984-85 (D.C. Cir. 2021) (quoting *Larson*, 565 F.3d at 865 ). Here, the Agency invoked INA Section 222(f), which provides, in relevant part:

> The records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States[.]

8 U.S.C. § 1202(f).

*First*, the D.C. Circuit "has squarely held that INA § 222(f) is a statutory provision covered by Exemption 3 and accordingly, records subject to the provision are exempt from disclosure under FOIA." *Airaj v. United States*, Civ. A. No. 15-983, 2016 WL 1698260, at *8 (D.D.C. Apr. 27, 2016) (citing *Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 744 (D.C. Cir. 1983)), *aff'd sub nom. Airaj v. U.S. Dep't of State*, No. 16-5193, 2017 WL 2347794 (D.C. Cir. Mar. 30, 2017). The statute qualifies as an Exemption 3 withholding statute because "[u]nder section 222(f) the Secretary of State has no authority to disclose material to the public." *Medina-Hincapie*, 700 F.2d

at 742. That absolute prohibition is not undermined by the discretion the statute leaves to the Secretary to disclose information "to a court which certifies that the information is needed in the interest of justice in a pending case." *Id.* at 741. In other words, "[t]he statute [] permits the Secretary to do only that which any agency subject to a confidentiality requirement would be required to do if it received a court order or subpoena to produce specified documents." *Id.* Moreover, the statute qualifies as a withholding statute because it "requires the Secretary to withhold records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States." *Id.* at 742 (cleaned up).

*Second*, the information Ericsson seeks—records relating to the adjudication of her nonimmigrant visa—squarely falls within the scope of Section 222(f). What falls within the scope of Section 222(f) is interpreted broadly. *See Airaj*, 2016 WL 1698260, at *8. It encompasses "information revealing the thought-processes of those who rule on the application" and "maintain[s] the confidentiality of the decision-making process." *Medina-Hincapie*, 700 F.2d at 744. In other words, Section 222(f) protects "the inner workings of the State Department," and exempts from release any information related to the State Department's reasons or evidence related to the review, processing, or adjudication of a visa application. *Id.* The court further elaborated that, "[t]he statute's plain language is not limited to actual visa applications; it applies to any information that 'pertain[s] to the issuance or refusals of visas.'" *Vizcarra Calderon v. Dep't of Homeland Sec.*, Civ. A. No. 18-0764 (CRC), 2020 WL 805212, at *2 n.4 (D.D.C. Feb. 18, 2020). Therefore, the court concluded, "information compiled for the purpose of informing visa decisions appears to easily fall within that scope[.]" *Id.*

At issue in *Medina-Hincapie* were the State Department's "notes, memoranda, correspondence, and other records relating in any way to [the applicant's] visa application or its denial." *Id.* at 739. The Court "h[eld] that section 222(f) prevents visa applicants from obtaining more material than [the applicant] [] received in this case and that the Department was justified in denying the remainder of his request under Exemption 3 of FOIA." *Id*. at 744. There, the State Department disclosed to the applicant the information that he already had received while applying for a visa but withheld all other information. *Id*. at 739-40. Following *Medina-Hincapie*, judges in this district have consistently upheld under Section 222(f) the State Department's withholding of information relating to the adjudication of a visa application. *See, e.g.*, *Beltranena v. Dep't of State*, 821 F. Supp. 2d 167, 177 (D.D.C. 2011); *Jud. Watch, Inc. v. Dep't of State*, 650 F. Supp. 2d 28, 33 (D.D.C. 2009); *Vizcarra Calderon*, 2020 WL 805212, at *2.

Here, Ericsson seeks the release of information found in two documents consisting of three pages. Baxley Decl. ¶ 17. The first document is a DS-3099, a State Department document titled "Non-Immigrant Visa Petition Revocation Request Cover Sheet." *Id.* The second document is a two-page memorandum prepared with and attached to the DS-3099. *Id.* Both documents were prepared by a Department of State employee while reviewing Ericsson's petition for an L-1 nonimmigrant visa. *Id.*

Ericsson argues that when the Agency obtained her records for potential revocation of her L-1A petition, the records became USCIS records, were no longer State Department records, and were no longer exempted pursuant to Section 222(f). *See* Ex. C, Plaintiff Appeal Letter, at 2. The notion that records originating with the State Department and pertaining to a visa adjudication would lose their protection from disclosure when shared with a fellow agency is irreconcilable with the language and purpose of Section 222(f). *See* 8 U.S.C. § 1202(f) (exempting "records of

the Department of State," rather than specifying which agency holds the records); *Medina-Hincapie*, 700 F.2d at 744 ("It would be unreasonable to read [Section 222(f)] in such a way that would expose the inner workings of the State Department to a visa applicant merely because he was the subject of the decision."); *Airaj*, 2016 WL 1698260, at *8 (rejecting the plaintiff's "strict interpretation" of Section 222(f) under which a pre-application visa process would not be covered because the "plain language of the statute . . . discourages [it]").

Moreover, "[p]ursuant to a Memorandum of Agreement Between the Department of State and the Department of Homeland Security, visa data that is provided by State under the Memorandum Of Agreement 'constitute visa records of Department of State within the scope of INA 222(f)' and 'must be treated in accordance with INA 222(f) . . . as determined by State.'" Baxley Decl. ¶ 17. The memorandum also requires that the Department of Homeland Security obtain the State Department's consent prior to "disclosing, reproducing, transmitting, or copying for disclosure a visa record (i.e.[,] the full visa file of any individual), or any portion of information from a visa record (e.g., an individual field or data element from a visa record), adjudications, and statistics to parties outside [the Department of Homeland Security] including, but not limited to, third parties, other U.S. Government Agencies/Offices, request from Congress, the Government Accountability Office, courts, and FOIA." *Id.* In reviewing this FOIA request, the Agency consulted with State Department, which affirmed that the records at issue are State Department records subject to INA Section 222(f). *Id.*

The three pages at issue are State Department "records that pertain[] to the issuance or refusal of a visa to enter the United States." Baxley Decl. ¶ 20. The Agency need show nothing more to justify withholding the information pursuant to Section 222(f). *Beltranena*, 821 F. Supp. 2d at 178 (concluding that the State Department "successfully demonstrated the applicability of

[Section 222(f)] where a declaration stated that a document "consist[s] in its entirety of a record pertaining to the issuance or refusal of a visa to enter the United States").  Because Ericsson is not entitled to receive from the Agency any information related to the adjudication of her visa application beyond that which she may already have, the Agency is justified in withholding the DS-3099 and two-page memorandum pursuant to FOIA Exemption 3 and Section 222(f).  *Medina-Hincapie*, 700 F.2d at 744; *see also Perry-Torres v. Dep't of State*, 404 F. Supp. 2d 140, 143-44 (D.D.C. 2005) (concluding that the Department "properly withheld information regarding the denial of plaintiff's visa application pursuant to Exemption (b)(3) of FOIA and Section 222(f) of the INA").

>    **B.**    **The Agency Properly Withheld the Requested Information Pursuant to Exemption 5 Because it is Protected by the Deliberative-Process Privilege.**

FOIA Exemption 5 exempts "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency" from production under FOIA.  5 U.S.C. § 552(b)(5).  This exemption shields documents that would be privileged in the context of civil discovery, including materials protected by the attorney-client privilege, the attorney work-product doctrine, and the deliberative-process privilege.  *Nat'l Lab. Rels. Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  Here, the Agency withheld information under the deliberative-process privilege.  *Vaughn* Index at 1-2.

The deliberative process privilege "protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  *Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008), (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).  The privilege applies to records that are both "predecisional" and "deliberative."  *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993).  As used in the context of the privilege, "predecisional"

material is that "generated before the adoption of agency policy." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Material is "deliberative" if it "reflects the give-and-take of the consultative process." *Id.* The privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.*

Here, the Agency applied this privilege to redact or withhold "documents reflecting recommendations and deliberations" related to the adjudication of Ericsson's visa petition. Baxley Decl. ¶ 23. Specifically, the documents included a Department of State employee's analysis of documentary evidence provided by Ericsson and whether the evidence satisfied eligibility criteria, as well as analysis of other factors in visa eligibility. *Id.* ¶ 24. The information is deliberative because it reflected "Department of State employee's analysis, opinions, deliberations, and recommendation" regarding Ericsson's eligibility for a visa. *Id.* The information is predecisional because the employee had not yet decided whether Ericsson was eligible for the visa; the records do not represent a final decision. *See id.* ¶¶ 23, 25. Therefore, this material is protected under the deliberative process privilege. *See Adionser v. Dep't of Just.*, 811 F. Supp. 2d 284, 297 (D.D.C. 2011) (holding that "handwritten attorney's notes, a warrant affidavit, a property list, a case timeline, and attorney correspondence" were protected under the deliberative process privilege), *aff'd*, No. 11-5093, 2012 WL 5897172 (D.C. Cir. Nov. 5, 2012).

Moreover, here there is foreseeable harm in disclosure of this information because disclosure would "chill or deter Department of State employees from engaging in the candid and frank discussions that are so important and necessary to the full and proper analysis and fair consideration of petitions on the merits" and "revealing the internal deliberations and analysis of

[Department of State] employees could provide a bad actor with information that would allow them to tailor their petition in a favorable, but fraudulent, manner." Baxley Decl. ¶ 25.

### C.    The Agency Properly Withheld Information Pursuant to Exemptions 6 and 7(C) for Privacy Concerns.

Exemptions 6 and 7(C) protect private information. Pursuant to those exemptions, the Agency redacted the name of a Department of State employee assigned to law enforcement matters in Plaintiff's case. Baxley Decl. ¶¶ 28, 32.

Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Its application is not limited to "a narrow class of files containing only a discrete kind of personal information[,]" but was "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982). Consequently, its "protection not only relates to entire physical files, but also encompasses bits of personal information that refer to a particular individual, including such items as a person's name." *Willis v. FBI*, Civ. A. No. 17-1959 (KBJ), 2019 WL 2138036, at *7 (D.D.C. May 16, 2019) (cleaned up). Exemption 7(C), conversely, is limited to information compiled for law enforcement purposes and protects personal information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Under both exemptions, the concept of privacy not only encompasses that which is inherently private, but also includes an "individual's control of information concerning his or her person." *Reps. Comm.*, 489 U.S. at 763.

Both provisions require agencies and reviewing courts to "'balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information.'" *Beck v. Dep't of Just.*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting *Davis v.*

*Dep't of Just.*, 968 F.2d 1276, 1281 (D.C. Cir. 1992)). That balance, however, tilts more strongly toward nondisclosure in the context of Exemption 7(C) because "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6." *Reps. Comm.*, 489 U.S. at 756.

The Court should begin its analysis with the question of whether any responsive documents would necessarily constitute law enforcement records to trigger Exemption 7(C)'s lower withholding threshold. *See Nova Oculus Partners, LLC v. SEC*, 486 F. Supp. 3d 280, 288 (D.D.C. 2020) ("When an agency invokes both exemptions, courts 'focus' on Exemption 7(C) because it 'establishes a lower bar for withholding material.'" (quoting *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Just.*, 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014)).

Here, the Agency withheld the name of a Department of State employee who was involved in the evaluation of Ericsson's visa petition. *Vaughn* Index at 2-3. The records withheld fall comfortably within those "compiled for law enforcement purposes." *See Jefferson v. Dep't of Just.*, 284 F.3d 172, 176–77 (D.C. Cir. 2002). As noted above, the records at issue are documents and analysis compiled as part of Ericsson's visa adjudication, including the identity of a Department of State employee "assigned to law enforcement matters" and involved in the evaluation of Ericsson's visa petition. Baxley Decl. ¶ 32. "Courts generally afford some deference to agencies specializing in law enforcement that claim their records are eligible for Exemption 7(C) protection." *Lindsey v. FBI*, 490 F. Supp. 3d 1, 17 (D.D.C. 2020) (cleaned up); *see also Gosen v. USCIS*, 75 F. Supp. 3d 279, 289 (D.D.C. 2014) ("courts regularly find Exemption 7 applicable to USCIS documents").

The records fall within the scope of "personnel and medical files and similar files." 5 U.S.C. § 552(b)(6). In *Washington Post*, the Supreme Court held that Congress intended "similar

files" to be interpreted broadly, rather than narrowly.  456 U.S. at 599-603.  The Court stated that the protection of an individual's privacy "surely was not intended to turn upon the label of the file which contains the damaging information."  *Id*. at 601.  Rather, the Court made clear that all information that "applies to a particular individual" meets the threshold requirement for Exemption 6 protection.  *Id*. at 602.  That threshold is clearly met here.

The Department of State employee's privacy interests also weigh in favor of withholding. In this context, the "FOIA requester must (1) 'show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake,' and (2) 'show the information is likely to advance that interest.'"  *Boyd v. Dep't of Just.*, 475 F.3d 381, 386–87 (D.C. Cir. 2007) (quoting *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004)).

But Ericsson cannot establish that the "public interest" sought to be advanced is a significant one; rather, the information withheld under Exemptions 6 and 7(C), to include the name of a government employee, would not advance a public interest.  It is apparent the information sought is for Ericsson's benefit rather than the public benefit at large.  Substantial privacy interests cognizable under FOIA are generally found to exist in personally identifying information such as a person's name.  *Wash. Post*, 456 U.S. at 600 (finding that "[i]nformation such as place of birth, date of birth, date of marriage, employment history, and comparable data is not normally regarded as highly personal, and yet . . . such information . . . would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy").  And, "[l]aw-enforcement personnel who 'do[ ] not forgo altogether any privacy claim in matters related to official business'" are entitled to the privacy afforded by FOIA.  *Bartko v. Dep't of Just.*, 898 F.3d 51, 71 (D.C. Cir.

2018) (quoting *Lesar v. Dep't of Just.*, 636 F.2d 472, 487 (D.C. Cir. 1980)). These factors plainly tip in favor of the Agency.

Because Ericsson does not advance any argument as to why disclosure of the employee's name would serve the public interest, or how, if at all, these substantial privacy interests would be outweighed by some limited public interest in the records sought, disclosure was proper under FOIA Exemptions 6 and 7(C). And, "[w]hen Exemption 7(C) is invoked . . . , the justifications for non-disclosure generally are also sufficient evidence of foreseeable harm." *Groenendal v. Exec. Off. For U.S. Att'ys*, Civ. A. No. 20-1030, 2024 WL 1299333, at *10 (D.D.C. Mar. 27, 2024) (quoting *Ball v. U.S. Marshals Serv.*, Civ. A. No. 19-1230, 2021 WL 4860590, at *9 (D.D.C. Oct. 19, 2021)).

**D.    The Agency Properly Withheld Information Under Exemption 7(E) to Avoid Risks of Circumvention of the Law.**

FOIA Exemption 7(E) permits an agency to withhold information that is "compiled for law enforcement purposes" and "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(3)(7)(E). This exemption applies broadly and allows agencies to withhold information that "would provide insight into [their] investigatory or procedural techniques." *Techserve All.*, 803 F. Supp. 2d at 28–29; *see also Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting that Exemption 7(E) sets "a relatively low bar for the agency to justify withholding" information). This exemption is so broad that "even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness." *Jud. Watch, Inc. v. Dep't of Com.*, 337 F. Supp. 2d at 181 (internal citation and quotation omitted). "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption

7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193-94 (D.C. Cir. 2009). The agency must show that (1) the information was compiled for law enforcement purposes, (2) the release of the records must disclose techniques, procedures, or guidelines for law enforcement investigations or prosecutions, and (3) the disclosure of those techniques, procedures, or guidelines could reasonably be expected to risk circumvention of the law. *Advancement Proj. v. Dep't of Homeland Sec.*, 549 F. Supp. 3d 128, 142 (D.D.C. 2021).

*First*, the withheld records were created for law enforcement purposes. "The term 'law enforcement' in Exemption 7 refers to the act of enforcing the law, both civil and criminal." *Pub. Emp. for Env't Resp. ("PEER") v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex.*, 740 F.3d 195, 203 (D.C. Cir. 2014). "In assessing whether records are compiled for law enforcement purposes, this circuit has long emphasized that the focus is on how and under what circumstances the requested files were compiled." *Jefferson v. Dep't of Just.*, 284 F.3d 172, 176–77 (D.C. Cir. 2002) (citations and internal quotation marks omitted). Courts assume that a "law enforcement agency['s]" records are for law-enforcement purposes because government agencies "typically go about their intended business," and courts apply a "more deferential attitude toward [their] claims of 'law enforcement purpose.'" *Pratt v. Webster*, 673 F.2d 408, 418–19 (D.C. Cir 1982). Considering this deference, the D.C. Circuit has opined that a law-enforcement agency need only show that the nexus between the activity in question and its law enforcement duties "must be based on information sufficient to support at least 'a colorable claim' of its rationality." *Keys v. Dep't of Just.*, 830 F.2d 337, 340 (D.C. Cir. 1987) (quoting *Pratt*, 673 F.2d at 421); *see also Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002) (noting that the Exemption

7 threshold may be satisfied even where the records in question do not relate to a particular investigation).

The records at issue belong to Department of State.[1]  *See* Baxley Decl. ¶ 20; *infra* § (I)(A). To be sure, the Department of State is a mixed function agency, meaning that only certain of its functions have "the salient characteristics of 'law enforcement' contemplated by the wording of exemption 7."  *Ctr. for Nat'l Pol'y Rev. on Race & Urb. Issues v. Weinberger*, 502 F.2d 370, 373 (D.C. Cir. 1974).  The requirement is met here because the withheld information includes law enforcement systems checks and was compiled while adjudicating a visa petition in accordance with the INA.  *See* Baxley Decl. ¶ 34; *Vaughn* Index at 3.  As another court has concluded, "[t]he Government's determination about whether visa applications should be approved or denied, pursuant to U.S. immigration laws, is an administrative determination that has the 'salient characteristics of "law enforcement contemplated"' and therefore meets the threshold requirement of Exemption 7."  *Nikaj v. Dep't of State*, Civ. A. No. 18-0496, 2019 WL 2602520, at *3 (W.D. Wash. Jun. 25, 2019) (quoting *Ctr. for Nat'l Pol'y Rev. on Race & Urb. Issues*, 502 F.2d at 371); *see also Advancement Proj.*, 2022 WL 4094061, at *9 (finding that visa adjudication guidance qualifies for a law enforcement purpose; collecting cases).

---

[1]     Even if, as Plaintiff claims, the records belonged to USCIS, Exemption 7(E) still applies; USCIS is a multifunction agency like the Department of State, and the records at issue were compiled for a law enforcement purpose (visa adjudication).  *See Gosen*, 75 F. Supp. 3d at 289-91 (reasoning that "courts regularly find Exemption 7 applicable to USCIS documents" and concluding that Exemptions 7(C) and 7(E) applied to the USCIS documents at issue); *Advancement Proj. v. Dep't of Homeland Sec.*, Civ. A. No. 19-0052 (RC), 2022 WL 4094061, at *9 (D.D.C. Sept. 7, 2022) (finding that visa adjudication guidance qualifies for a law enforcement purpose); *see, e.g.*, *Techserve All.*, 803 F. Supp. 2d at 29 (concluding that Exemption 7(E) applied to USCIS documents); *Skinner v. Dep't of Just.*, 806 F. Supp. 2d 105, 113-16 (D.D.C. 2011) (concluding that Exemptions 7(C) and 7(E) applied to USCIS documents).

*Second*, the withheld information falls comfortably within the protection of Exemption 7(E) because disclosure would include "techniques and procedures for law enforcement investigations"—specifically those related to assessing a non-citizen's eligibility for a visa.  Baxley Decl. ¶ 34; *see Advancement Proj.*, 549 F. Supp. 3d at 142.  The documents include law enforcement systems checks and analysis of factors related to visa eligibility in Ericsson's case—the very type of techniques and procedures that Exemption 7(E) is meant to protect.  Baxley Decl. ¶ 24, 34.

*Third*, courts have reached differing conclusions as to whether the first clause of Exemption 7(E)—protecting techniques and procedures for law enforcement investigations or prosecutions—requires a showing that disclosure could risk circumvention of the law.  *See PEER*, 740 F.3d at 205 n.4.  The presence of the comma between the clause about "law enforcement investigation or prosecutions" and the conjunction preceding the clause about "guidelines for law enforcement investigations" indicates that the "risk circumvention" requirement, which directly follows the guidelines phrase, applies only to the disclosure of guidelines and that no such showing is required where techniques and procedures are involved.  5 U.S.C. § 552(b)(3)(7)(E); *see Allard K. Lowenstein Int'l Hum. Rts. Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010) ("[B]asic rules of grammar and punctuation dictate that the qualifying phrase modifies only the immediately antecedent 'guidelines' clause and not the more remote 'techniques and procedures' clause."); *see also id.* (noting that the history of the statute's amendments supports this reading as well).  To be sure, the D.C. Circuit has applied the "risk circumvention" condition to disclosures of techniques and procedures, but it did so without analysis or explicit rejection of any other interpretation.  *See Blackwell*, 646 F.3d at 41–42.

- 17 -

In any event, as the D.C. Circuit has noted, "given the low bar posed by the 'risk circumvention of the law' requirement, it is not clear that the difference matters much in practice." *PEER*, 740 F.3d at 205 n.4. Indeed, the D.C. Circuit has noted that information may be withheld "not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Mayer Brown*, 562 F.3d at 1193; *see also Blackwell*, 646 F.3d at 42 (noting that Exemption 7(E) offers "a relatively low bar for the agency to justify withholding" information).

Here, if revealed, this information would enable determined individuals, including criminals and terrorists, to circumvent the procedures used for adjudicating visas and could reasonably be expected to risk circumvention of the law. Baxley Decl. ¶ 34. Disclosure could enable these individuals to predict and attempt to influence the Agency and Department of State's decision-making when investigating and adjudicating a visa application, including by attempting to influence the type of information that is made available to Agency and Department officials. Such influence could result in the criminal making better informed decisions about the type of information shared publicly or disclosed to specific sources. Disclosure of these techniques could therefore reasonably be expected to risk circumvention of the law. *Id*. Courts have often upheld the withholding of this type of information from internal government systems. *See, e.g.*, *Advancement Proj.*, 2022 WL 4094061, at *10.

When assessing foreseeable harm with respect to 7(E), "the Court looks to much of the same indicia in this analysis as it did when assessing the" application of the exemption. *Project*

*for Priv. & Surveillance Accountability, Inc. v. Dep't of Just.*, Civ. A. No. 21-2362 (RC), 2024 WL 2864191, at *9 (D.D.C. June 6, 2024).  Therefore, foreseeable harm has been shown here.

## II.    The Department Properly Determined that the Responsive Records Contained No <u>Reasonably Segregable Portions.</u>

Under FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  "It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  *Mead Data*, 566 F.2d at 260.  Although the agency "must provide a 'detailed justification' for its non-segregability," it "is not required to provide so much detail that the exempt material would be effectively disclosed."  *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead Data*, 566 F.2d at 261).  All that is required is that the government show "with reasonable specificity" why a document cannot be further segregated.  *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996) (internal citations omitted); *see Beltranena*, 821 F. Supp. 2d at 167.  Moreover, the Department is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content."  *Mead Data*, 566 F.2d at 261, n.55.  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester.  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

The Agency has declared and asserted in its *Vaughn* index that it has reviewed each record to identify information exempt from disclosure and determined that there is no additional meaningful, non-exempt information that can be reasonably segregated and released from the

information being withheld. Therefore, all segregable information has been released, and Defendant is entitled to judgment as a matter of law.

* * *

## CONCLUSION

For these reasons, the Agency respectfully requests that the Court grant its motion for summary judgment and enter judgment for the Agency.

Dated: December 13, 2024

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:_____*/s/ Kimberly A. Stratton*_____
    KIMBERLY A. STRATTON
    P.A. Bar #327725
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 417-4216
    kimberly.stratton@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUZANNE ERICSSON,

          Plaintiff,

    v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

          Defendant.

Civil Action No. No. 24-0749 (JEB)

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendant's motion for summary judgment, and the entire record herein, it is hereby

ORDERED that Defendant's motion is GRANTED, and it is further

ORDERED that summary judgment is ENTERED for Defendant.


SO ORDERED:


_____
Date

_____
JAMES E. BOASBERG
United States District Judge